# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

ZEINAB MAKKI

Defendant.

Case: 2:22-cr-20172
Judge: Roberts, Victoria A.
MJ: Altman, Kimberly G.
Filed: 03-29-2022
INDI USA VS MAKKI (DP)

18 U.S.C. 1347 (Health Care Fraud)

---

# INDICTMENT

---

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Affiliated Pharmacies

1.      New Millennium Drugs (NMD) was an assumed name for Kirtland Corporation which was registered  with the State of Michigan with a business address in Inkster, MI.

2.      Western Wayne Pharmaceuticals (WWP) is registered as a limited liability corporation in the State of Michigan with a business address in Inkster, MI.

**Defendant**

3.      At all times relevant to the indictment, Defendant ZEINAB MAKKI, a resident of Wayne County, Michigan, was the Pharmacist-In-Charge of New Millennium Drugs (NMD) and Western Wayne Pharmacy (WWP).

4.      ZEINAB MAKKI was the pharmacist-in-charge at NMD from 2001 until January 28, 2021, when the pharmacy was sold; and at WWP from November 2017 to present.

**The Medicare and Medicaid Programs**

5.      The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

6.      Medicare covered different types of benefits and was separated into different program "parts."  Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States.  Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if,

among other requirements, the prescription drugs were medically necessary and ordered by a physician.

7.      Physicians, pharmacies, and other health care providers that provided medical services that were to be reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit applications in which the providers agreed to comply with all Medicare-related policies and procedures, rules, and regulations issued by CMS and its agents and contractors, including those governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

8.      If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," ("NPI") which was used for the processing and payment of claims.

9.      In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans.  Medicare drug plans were operated by private health care insurance companies approved by Medicare.  Those companies were often referred to as drug plan "sponsors."  A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

10.     Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary enrolled in the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

11.     The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

12.     Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

13.     Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

14.     Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

### Pharmacy Benefit Managers

15.     Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans.  PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

16.     Upon dispensing a prescription drug to a beneficiary, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program.  The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

17.     CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans.

18.     Pharmacies were typically allowed fourteen (14) days from the date of fill to submit claims for reimbursement to PBMs. These pharmacies were typically were allowed fourteen (14) days from the date of fill to reverse claims for medications that were not dispensed.

19.     McKesson is a pharmaceutical wholesaler from which pharmacies purchase medication.

**COUNT ONE**
**Health Care Fraud**
**(18 U.S.C. §§ 1347 and 2)**

20.     Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

21.     Beginning in or around January 2, 2012 and continuing through at least in or around March 2022, in Wayne County, in the Eastern District of Michigan, and elsewhere, ZEINAB MAKKI, as specified below, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

6

**Purpose of the Scheme and Artifice**

22.     It was the object and purpose of the scheme and artifice for ZEINAB MAKKI to unlawfully enrich herself by, among other things: (a) submitting, and causing the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans for pharmaceuticals not dispensed; (b) submitting and causing the submission of false and fraudulent claims for deceased beneficiaries; (c) submitting and causing the submission of false and fraudulent claims for larger quantities than were actually dispensed; (d) submitting and causing to the submission of false and fraudulent claims for dispensing pharmaceuticals without a valid prescription; and (e) diverting fraud proceeds for her personal use and benefit.

**The Scheme and Artifice**

23.     ZEINAB MAKKI maintained an NPI for NMD and WWP to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans.

24.     ZEINAB MAKKI, on behalf of NMD and WWP, entered into pharmacy provider agreements with PBMs.

25.     ZEINAB MAKKI submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, and

7

Medicaid health plans, on behalf of NMD and WWP for prescription drugs that were not dispensed.

26.     ZEINAB MAKKI submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans on behalf of NMD and WWP, for drugs purportedly dispensed in quantities that exceeded the amount NMD and WWP actually purchased from pharmaceutical wholesalers.

27.     ZEINAB MAKKI submitted and caused to be submitted at least $10.6 million in false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans on behalf of NMD and WWP.

28.     ZEINAB MAKKI personally profited from her participation in the scheme by receiving fraud proceeds for her personal use and benefit.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

29.     The allegations contained in Count One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 2461.

30.     Upon conviction of the violation alleged in Counts One and Two of this Indictment, the convicted defendant shall forfeit to the United States (a) any

8

property, real or personal, that constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

31.     Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of any of the violations alleged in Counts One and Two of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

32.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the convicted defendant:

a.     Cannot be located upon the exercise of due diligence;

b.     Has been transferred or sold to, or deposited with, a third party;

c.     Has been placed beyond the jurisdiction of the Court;

d.     Has been substantially diminished in value; or

e.     Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated

by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property

of such defendant up to the value of the forfeitable property described above.

33.   Money Judgment: Upon being convicted of violating any of the

offenses alleged in this Indictment, the convicted defendant shall be ordered to pay

the United States a sum of money equal to the total amount of proceeds the convicted

defendant obtained as a result of such violation(s).

THIS IS A TRUE BILL.


                                        s/GRAND JURY FOREPERSON

DAWN N. ISON
United States Attorney


s/REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office


s/PHILIP A. ROSS
Assistant United States Attorney
United States Attorney's Office


Dated: March 29, 2022



10

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: _PAR_ |

**Case Title:** USA v.  ZEINAB MAKKI _____

**County where offense occurred :**  WAYNE _____

**Check One:**    ☒ Felony            ☐ Misdemeanor            ☐ Petty

    ____Indictment/____Information --- **no** prior complaint.
    __✓__Indictment/____Information --- based upon prior complaint [Case number: 22-mj-30141            ]
    ____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

    ☐ Corrects errors; no additional charges or defendants.
    ☐ Involves, for plea purposes, different charges or adds counts.
    ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 29, 2022 _____
Date

PHILIP A. ROSS
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9790
Fax:    (313) 226-2621
E-Mail address: philip.ross@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.